UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. JOHN HOSPITAL-MACOMB,

      Plaintiff,

v.

AUTO CLUB INSURANCE ASSOCIATION
and BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

      Defendants;

and

DIANE TEGO,

      Plaintiff,

v.

AUTO CLUB INSURANCE ASSOCIATION,
BLUE CROSS AND BLUE SHIELD OF
MICHIGAN, and ST. JOHN HOSPITAL-
MACOMB.

      Defendants.

_____/

Case No. 04-73407
(Consolidated with 04-75097)

Honorable Nancy G. Edmunds

**ORDER GRANTING BCBSM'S MOTION TO AFFIRM
ADMINISTRATOR'S DECISION TO DENY TEGO'S BENEFITS [42],
DENYING TEGO'S CROSS-MOTION TO REVERSE THE PLAN ADMINISTRATOR'S
DECISION [44], and REMANDING TO THE OAKLAND COUNTY CIRCUIT COURT**

      This matter came before the Court upon the Court's Order For Further Briefing On

ERISA Issue.  Plaintiff, Diane Tego, brought suit against Defendants, Automobile Club

Insurance of America ("ACIA"), Blue Cross and Blue Shield of Michigan ("BCBSM"), and

St. John Hospital-Macomb ("St. John"), to determine why medical expenses arising from

her 1995 auto accident had not been settled.  BCBSM, Tego's plan administrator, has denied her claims.  BCBSM has filed a Motion to Affirm The Administrator's Decision To Deny Tego's Claims and Tego has filed a Cross Motion to Reverse The Administrators Decision.  For the reasons set forth below, BCBSM's Motion to Affirm The Administrator's Decision to Deny Tego's Claims is GRANTED and Tego's Motion to Reverse The Administrator's Decision is DENIED.

## I.    Background[1]

Plaintiff Diane Tego was injured in an automobile accident in 1995. She suffered a traumatic brain injury in the accident, resulting in cognitive, behavioral, and emotional impairments, and requiring a lengthy recovery, the costs of which remain unpaid. (Tego's Mot. for Summ. J., 5.)

On August 12, 2004, Ms. Tego filed a lawsuit in the Oakland County Circuit Court against her no-fault and primary insurers, ACIA and BCBSM, respectively, and her health care provider, St. John.  Ms. Tego sought "an Order to Show Cause against Defendants . . . as to why the medical expense incurred by the Plaintiff and arising out of the accident of June 25, 1995, remains outstanding . . . ."  She also asked the court to "declare Defendants' obligations as to said medical expense, and otherwise determine and declare the rights and responsibilities of the parties pursuant to their policies and the applicable law."  (Tego's Compl., 12-13.)

---

[1]The initial four paragraphs are taken from this Court's March 21, 2006 Order.

2

Also on August 12, 2004, St. John filed a lawsuit in the Oakland County Circuit Court against both BCBSM and ACIA for payment of medical bills relating to the Diane Tego accident.  St. John did not name Ms. Tego as a defendant in that lawsuit.

Later in 2004, BCBSM removed both cases to federal court on the ground its potential liability is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  BCBSM is the Plan Administrator for Ms. Tego's ERISA-governed benefit plan. The two cases were consolidated in this Court.

Subsequently, Tego and BCBSM filed Motions for Summary Judgment.  On March 21, 2006, this Court denied without prejudice Tego's Motion for Summary Judgment and BCBSM's Motion for Summary Judgment because the ERISA issue creating jurisdiction for this Court hand not been fully addressed.  This Court ordered BCBSM and Tego to file motions either to affirm or reverse the plan administrator's decision to deny Tego's claims.

## II.    Standard of Review

The Sixth Circuit in *Wilkins v. Baptist Healthcare System,* 150 F.3d 609 (6th Cir. 1998), recognized that under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the standard of review for a plan administrator's denial of benefits is *de novo*, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Wilkins,* 150 F.3d at 613.  Where the benefit plan gives such discretion to the plan administrator, "the highly deferential arbitrary and capricious standard of review is appropriate . . . ."  *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

Here, the benefit plan gives BCBSM discretionary authority to construe the terms of the plan.  Paragraph 9 of the Group Enrollment & Coverage Agreement states, "As the

3

named claims administrator, BCBSM shall have the power and discretion to construe the

terms of, and to determine all questions pertaining to the administration, interpretation, and

application of the Agreement . . . ."  (BCBSM's J.A. Supplement.)  Thus, pursuant to

*Firestone* and *Yeager,* the standard of review for this case is arbitrary and capricious.[2]

## III.   Discussion

Tego seeks coverage for treatment at the Neuropsychiatric Day Program at St. John.

BCBSM argues that this program, which included inpatient treatment, does not meet the

plan's medical necessity requirement for coverage.

Hospital services  are only covered under the plan if they are medically necessary.

(J.A. Ex. B, 7.8.)  Hospital services are covered when, "The service, treatment or supply

is **appropriate** for the symptoms and is consistent with the diagnosis." *Id.* (emphasis in

original).  "**Appropriate** means that the type, level and length of care, treatment or supply

and setting is needed to provide safe, adequate care and treatment." *Id.* (emphasis in

original).  Inpatient stays in particular "must be necessitated by the patient's condition

because safe and adequate care cannot be received as an outpatient or in a less

intensified medical setting."  (J.A. Ex. B, 7.9.)

In determining whether Tego's treatment expenses are covered by the plan, BCBSM

reviewed her records twice.  Both reviews note that Tego's medical records were

incomplete and mainly composed of notes relating to group therapies.  (J.A., Ex. H, Ex. I.)

---

[2]Tego argues for a *de novo* standard by applying the holding in *Wilkins* on the issue of standard of review.  (*See Tego's Mot. to Reverse, 4.*)  This is inappropriate.  *Wilkins* is distinguishable from Tego's case because Tego's health plan gives discretionary power to the plan administrator where the plan in *Wilkins* did not.  *Wilkins,* 150 F.3d at 613.  Tego should have applied the test used in *Wilkins* to her facts, rather than simply adopting holding.

The first-level reviewer requested, but did not receive, additional documentation. (J.A. Ex. D.) (BCBSM's Mot., 4.)

The first-level appeal, conducted by Magellon Behavioral of Michigan ("Magellon"), a contractor for BCBSM, determined that Tego did not need such intense treatment. (J.A., Ex. H).  In particular, Dr. Krajewski, who completed the appeal, noted that Tego did not exhibit homicidal or suicidal symptoms and that she appeared to be overall functional. *Id.* Though there is no specific requirement for homicidal or suicidal symptoms, as Tego points out, the absence of such symptoms and a patient's overall functionality are relevant factors. Homicidal or suicidal symptoms and overall functionality particularly address whether inpatient treatment is "necessitated by the patient's condition because safe and adequate care cannot be received as an outpatient . . . ."  The first-level review found that based on the provided record, the intensity of Tego's treatment was unnecessary for her condition.

The second-level review was completed by MCMC, an out-of-state independent review organization.  MCMC also determined that the PHP program was not necessary for Tego.  The MCMC review noted that Tego's condition was coded as Delirium, which the reviewer deemed to be a medical, as opposed to psychiatric, emergency. (J.A., Ex. I.) The distinction between medical and psychiatric emergency addresses the necessity of Tego's treatment in the Neuropsychiatric Day Program.  In other words, the psychiatric treatment Tego received was not appropriate to the medical issue she apparently faced.  Thus,

BCBSM's second-level decision to deny Tego's claims was reasonably made and absent any hint of arbitrariness or capriciousness.[3]

## IV.   Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby GRANTS BCBSM's Motion to Affirm The Administrator's Decision To Deny Tego's Claims and DENIES Tego's Motion to Reverse The Administrator's Decision To Deny Tego's Claims.

Granting BCBSM's Motion ends the ERISA portion of this dispute and thus dismisses all claims for which this Court has original jurisdiction.   This Court declines to exercise supplemental jurisdiction over the remaining claims and remands them to the Oakland County Circuit Court pursuant to 28 U.S.C. 1367(c)(1).


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 4, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[3]This Court asked the parties to examine whether Tego's failure to exhaust administrative remedies acted as a bar to her recovery.  BCBSM concedes that because Tego's health care provider appealed BCBSM's decision, Tego's further appeal would be unnecessary.  (BCBSM's Mot., 4.)

6